**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

_____

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| RAG EAST, LP, | ) | **Bankruptcy No. 12-22328 – CMB** |
| | ) | |
| Debtor. | ) | **Chapter 7** |
| _____ | ) | |
| | ) | |
| PRIMEROCK REAL | ) | |
| ESTATE FUND, LP, | ) | **Adversary No. 12-2454 – CMB** |
| | ) | |
| Plaintiff, | ) | **Related to Doc. Nos. 21, 22 & 27** |
| | ) | |
| v. | ) | |
| | ) | |
| RAG EAST, LP, | ) | |
| JEFFREY J. SIKIRICA, in his capacity | ) | |
| as Chapter 7 Trustee for RAG EAST, LP, | ) | |
| MILESTONE BANK, | ) | |
| ZHONG ZHUANG, | ) | |
| CITY OF PHILADELPHIA, THE | ) | |
| SCHOOL DISTRICT OF | ) | |
| PHILADELPHIA, PHILADELPHIA | ) | |
| WATER & SEWER, PHILADELPHIA | ) | |
| GAS WORKS, AXIS CONSTRUCTION | ) | |
| MANAGEMENT, LLC, and | ) | |
| PHILADELPHIA COMMISSIONER | ) | |
| OF RECORDS, | ) | |
| | ) | |
| Defendants. | ) | |
| _____ | ) | |

**MEMORANDUM OPINION**

The matters before the Court are cross motions for summary judgment in the above-captioned adversary proceeding. Plaintiff commenced this proceeding by filing the Complaint of Primerock Real Estate Fund, LP Seeking (A) Declaratory Judgment to Strike Satisfaction Piece (B) Declaratory Judgment to Strike Termination Statement; (C) an Order to Quiet Title as to the Primerock Mortgage, and (D) Declaratory Judgment Determining the Validity and Priority of

Liens Held by Primerock Real Estate Fund, LP.[1] Primerock Real Estate Fund, LP ("Primerock")

filed a motion for summary judgment, to which Defendants MileStone Bank ("MileStone") and

Zhuang Zhong (also referred to at times in the filings as "Zhong Zhuang," and hereinafter

referred to as "Zhuang") responded. In his response in opposition to Primerock's motion, Zhuang

sought summary judgment against Primerock. Upon consideration of the cross motions for

summary judgment and for the reasons set forth herein, this Court finds that entry of judgment in

favor of Primerock is appropriate and its motion is granted. The motion of Zhuang is denied.

This Court also finds it appropriate to enter default judgment against RAG East, LP (the

"Debtor") as requested by Primerock as Debtor has neither answered nor participated in this

proceeding.


Background

    The Debtor is a Pennsylvania limited partnership. The Debtor's general partner is RAG

II, Inc. ("RAG II"), a Pennsylvania corporation whose sole shareholder is Erik Sobkiewicz

("Sobkiewicz"). The Debtor's primary asset is certain real and personal property located at 100-

102 Market Street in Philadelphia, Pennsylvania (the "Property"), consisting of a vacant, five-

---

[1] This Court has subject matter jurisdiction pursuant to 28 U.S.C. §§157 and 1334. This is a core matter pursuant to 28 U.S.C. §157(b)(2)(K). The Court will enter final judgment. Furthermore, "Primerock, MileStone, and Zhuang, [Plaintiff and only Defendants to have answered the Complaint] through their respective . . . counsel, each consent to the entry of any final order or judgment entered by the Court in this adversary proceeding, without regard to whether the adversary is a core or non-core matter." *See Stipulated Findings of Fact and Consent to Entry of Final Orders*, Adv. Doc. No. 40, at ¶47. However, if the United States District Court determines pursuant to the rationale set forth in *Stern v. Marshall*, 131 S.Ct. 2594 (U.S. 2011), that this Court does not have the authority to enter final judgment, then the Memorandum Opinion and Order entered shall constitute the Court's proposed findings of fact and conclusions of law and recommendation to the District Court.

story building which Sobkiewicz intended to purchase for the purpose of establishing a
restaurant and bar on the ground floor of the building and leasing the remaining space.

On May 2, 2012, Zhuang filed an involuntary petition for bankruptcy relief under chapter
7 of the Bankruptcy Code against the Debtor, and the Court entered an Order for Relief on
August 2, 2012. Defendant Jeffrey J. Sikirica was appointed as Trustee for the Debtor's
bankruptcy estate.

The instant proceeding was commenced when Primerock filed its Complaint seeking the
entry of an Order confirming that it holds a first-priority lien upon, and a security interest in, the
Property despite the filing of an unauthorized Termination Statement with the Pennsylvania
Secretary of State and a forged Satisfaction Piece filed with the Commissioner of Records.
Primerock's Complaint sets forth four separate counts. As to Count I (Declaratory Judgment to
Strike Satisfaction Piece) and Count II (Declaratory Judgment to Strike Termination Statement),
Primerock seeks relief against the Debtor and the Chapter 7 Trustee only. Count III (Action to
Quiet Title with Respect to the Primerock Mortgage) and Count IV (Declaratory Judgment
Regarding the Priority of the Liens and Security Interests Held by Primerock) are asserted
against all Defendants.

Since the filing of the Complaint, Primerock entered into stipulations with most of the
Defendants[2] pursuant to which those Defendants are not contesting the relief requested by

---

[2] *See* Stipulation and Agreed Order Between Primerock Real Estate Fund, LP and Philadelphia
Gas Works, Adv. Doc. No. 13; Stipulation and Agreed Order Between Primerock Real Estate
Fund, LP and Axis Construction Management, LLC, Adv. Doc. No. 14; Stipulation and Agreed
Order Between Primerock Real Estate Fund, LP and City of Philadelphia, School District of
Philadelphia, and Philadelphia Water Revenue Bureau, Adv. Doc. No. 18; Stipulation and
Agreed Order Between Primerock Real Estate Fund, LP and Jeffrey J. Sikirica, as Chapter 7
Trustee, Adv. Doc. No. 32.

Primerock. The Debtor did not file an answer and has not participated in this proceeding.[3] As to

the remaining Defendants, MileStone and Zhuang, Primerock filed a motion for summary

judgment. Zhuang filed a response in opposition to Primerock's motion and sought summary

judgment in his favor against Primerock. Although MileStone filed an answer and opposition to

Primerock's motion, Primerock and MileStone represented to the Court at the hearing held on

January 22, 2013, that they reached an agreement. Accordingly, MileStone is no longer opposing

Primerock's request for relief.[4] The Court heard argument on the cross motions for summary

judgment on January 22, 2013 and the matters are ripe for decision.


<u>Summary Judgment</u>

The standard for deciding a motion for summary judgment is set forth in Fed.R.Civ.P. 56,

made applicable in adversary proceedings by Fed.R.Bankr.P. 7056. "The court shall grant

summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The burden is

initially on the moving party. *See Rosen v. Bezner*, 996 F.2d 1527, 1530 (3d Cir. 1993). A party

moving for summary judgment can satisfy its burden by citing to materials in the record,

including depositions, documents, affidavits, stipulations, admissions, and interrogatory answers.

See Fed.R.Civ.P. 56(c). In deciding the motion for summary judgment, all inferences to be

---

[3] Accordingly, Primerock filed a Motion for Entry of Default Judgment Against Defendant Rag East, LP. *See* Adv. Doc. No. 21. The Court refrained from entering default judgment for the reasons discussed at hearings and expressed in Zhuang's Response to Primerock's Motion for Entry of Default Judgment, as entry of judgment against Debtor had the potential to negatively impact the other parties' interests in this proceeding. As all remaining issues are resolved in this Opinion and Primerock is entitled to judgment against the Debtor, judgment against the Debtor will be entered.

[4] The Court notes that a stipulation reflecting the agreement between the parties has not been filed on the docket. Nonetheless, the parties have resolved the issues between them.

drawn from underlying facts shall be construed by the Court in the light most favorable to the

non-moving party. *Rosen*, 996 F.2d at 1530. "It is well settled that cross-motions for summary

judgment do not warrant the court in granting summary judgment unless one of the moving

parties is entitled to judgment as a matter of law upon facts that are not genuinely disputed."

*Manetas v. Int'l Petroleum Carriers, Inc.*, 541 F.2d 408, 413 (3d Cir. 1976). With this standard

in mind, the Court evaluated the cross motions for summary judgment.


Stipulated Facts

The parties filed stipulated findings of fact for the purpose of this Court resolving the

cross motions for summary judgment. The relevant stipulated facts are incorporated and restated

herein as follows:

In the spring of 2011, Sobkiewicz solicited a loan from Primerock to finance the

acquisition of the Property from United Bank of Philadelphia ("United Bank"). On or about June

6, 2011, Primerock made a loan of $750,000 (the "Primerock Loan") to the Debtor and

Sobkiewicz (together "Borrowers") to finance the purchase of the Property. To evidence their

obligations to Primerock, Borrowers executed and delivered to Primerock that certain Term Note

dated June 6, 2011 (the "Primerock Note") in the original principal amount of $750,000. RAG

II's president, Sobkiewicz, executed the Primerock Note on behalf of the Debtor as its General

Partner. On or about June 7, 2011, United Bank conveyed the Property to the Debtor by special

warranty deed, which was recorded on June 10, 2011 with the Commissioner of Records.

To secure the payment of Borrowers' obligations under the Primerock Note, the Debtor

executed and delivered to Primerock, *inter alia*, that certain Open-End Mortgage and Security

Agreement made effective June 7, 2011 (the "Primerock Mortgage"), which granted to

5

Primerock a security interest in, and a lien upon, the Property. The Primerock Mortgage was recorded on June 10, 2011 with the Commissioner of Records. To further secure the payment of Borrowers' obligations under the Primerock Note, the Debtor executed and delivered to Primerock, *inter alia*, that certain Security Agreement dated June 6, 2011 (the "Primerock Security Agreement"), which granted to Primerock a security interest in, and a lien upon, all of the Debtor's personal property. In connection with the Primerock Security Agreement, a UCC-1 financing statement was filed with the Pennsylvania Secretary of State (the "Financing Statement"). Primerock relied upon the fact that it would receive a first mortgage lien on the Property and a first-priority security interest in the Debtor's personal property.

Subsequently, in December 2011, the Debtor obtained a construction loan from MileStone in the principal amount of $350,000 (the "2011 MileStone Loan"). To secure the obligations under the 2011 MileStone Loan, the Debtor executed an Open-End Construction Mortgage and Security Agreement in favor of MileStone (the "2011 MileStone Mortgage") which granted MileStone liens upon, and security interests in, the Property. The 2011 MileStone Mortgage was recorded on December 20, 2011 with the Commissioner of Records. The Debtor and MileStone did not contact Primerock regarding the loan or seek Primerock's consent to enter into the new financing. MileStone denies that there was any obligation on the part of MileStone to contact Primerock or to seek its consent to the MileStone loan.

After the 2011 MileStone Mortgage was recorded, a certain Satisfaction Piece allegedly executed by Primerock (the "Satisfaction Piece") was filed with the Commissioner of Records. The Satisfaction Piece was recorded ostensibly for the purpose of releasing the liens and security interests granted to Primerock under the Primerock Mortgage. The Satisfaction Piece was allegedly executed on August 30, 2011 by John J. Hathaway ("Mr. Hathaway"), as managing

director of Primerock, but Mr. Hathaway did not execute the Satisfaction Piece. Mr. Hathaway provided a sworn statement indicating that the signature on the Satisfaction Piece is a forgery. Neither Mr. Hathaway nor Primerock authorized the recording of the Satisfaction Piece with the Commissioner of Records.

MileStone had knowledge of the Primerock Mortgage at the time it funded the 2011 MileStone loan. However, MileStone would not have made the 2011 MileStone Loan if it was not provided a first lien mortgage on the Property. MileStone had no involvement with either the creation or execution of the Satisfaction Piece. MileStone relied upon the fact that it would receive a first mortgage lien on the Property. At the time it made the 2011 MileStone Loan, MileStone was wholly unaware of any issue with the Satisfaction Piece and had no reason to believe that the Satisfaction Piece was either forged or in any way fraudulent.

Subsequently, on or about March 6, 2012, a UCC-3 termination statement (the "Termination Statement") was filed with the Pennsylvania Secretary of State which purported to terminate Primerock's rights under the Financing Statement. Primerock neither authorized nor consented to the filing of the Termination Statement.

Shortly thereafter, on or about March 8, 2012, Zhuang made a loan of $600,000 (the "Zhuang Loan") to the Debtor and its affiliates, LCH, Inc. and Market Street Bar & Grille, Inc. (together with the Debtor, the "Zhuang Borrowers"). To evidence their obligations under the Zhuang Loan, the Zhuang Borrowers executed and delivered a Term Note dated March 8, 2012 (the "Zhuang Note") in the original principal amount of $600,000. At the time the Zhuang Loan was made, Zhuang was unaware that Primerock continued to claim a mortgage lien against the Property. Zhuang understood that Primerock's mortgage had been satisfied because of the Satisfaction Piece. Had the Satisfaction Piece not been recorded, Zhuang would not have made

the Zhuang Loan. Prior to making the Zhuang Loan, Zhuang was not aware that the Primerock

Mortgage had been wrongfully terminated, nor was Zhuang involved in any way with the

Satisfaction Piece or the filing of the Termination Statement.

Also in March 2012, the Debtor obtained an additional construction loan from MileStone

for a principal amount of up to $1,500,000 (the "2012 MileStone Loan"). The outstanding

balance due under the 2011 MileStone Loan was rolled into, and became a part of, the

obligations due under the 2012 MileStone Loan. The Debtor secured its obligations under the

2012 MileStone Loan by executing and delivering an Open-End Construction Mortgage and

Security Agreement dated March 9, 2012 (the "2012 MileStone Mortgage"), which granted to

MileStone certain liens and security interests against the Property. The 2012 MileStone

Mortgage was recorded on March 15, 2012 with the Commissioner of Records. The Borrowers

were authorized to make draws against the 2012 MileStone Loan as needed to pay certain

expenses. MileStone would not have made the 2012 MileStone Loan if it was not provided a first

lien mortgage on the Property. MileStone relied upon the fact that it would receive a first

mortgage lien on the Property for the 2012 MileStone Loan. At the time it made the 2012

MileStone Loan, MileStone was wholly unaware of any issue with the Satisfaction Piece and had

no reason to believe that any Satisfaction Piece was either forged or in any way fraudulent.

MileStone made its loans to the Debtor in good faith and without any notice of a claim by

Primerock that it continued to maintain a lien on the Property.

Primerock did not discover the existence of the Satisfaction Piece or Termination

Statement until after the 2012 MileStone Loan and Zhuang Loan were made. On March 16,

2012, Primerock confessed judgment against the Debtor before the Court of Common Pleas of

Philadelphia County, Pennsylvania for all amounts due and owing under the Primerock Loan,

including those amounts accruing under the Primerock Note, Primerock Mortgage, and

Primerock Security Agreement.

In order to secure the Zhuang Borrowers' obligations under the Zhuang Note of March 8,

2012, the Debtor executed and delivered to Zhuang a Mortgage and Security Agreement on April

24, 2012 (the "Zhuang Mortgage"), which granted to Zhuang a security interest in, and a lien

upon, the Property. The Zhuang Mortgage was recorded on April 30, 2012 with the

Commissioner of Records.[5] Zhuang also filed a financing statement against the Debtor with the

Pennsylvania Secretary of State.

As of the current date, the amounts owed by the Debtor to (1) Primerock under the

Primerock Note, Primerock Mortgage, and Primerock Security Agreement, (2) MileStone under

the 2012 MileStone Loan and 2012 MileStone Mortgage, and (3) Zhuang under the Zhuang

Loan, Zhuang Note, and Zhuang Mortgage all remain unsatisfied. What is readily apparent from

the stipulated facts is that Primerock, MileStone, and Zhuang are the innocent victims of the

forged Satisfaction Piece and unauthorized Termination Statement. Unfortunately, the hardship

must inevitably fall on one of these parties. Based upon these stipulated facts, this Court

considers the cross motions for summary judgment and resolves the priority of the parties'

respective interests in the Property.


Conclusions of Law

Primerock's claims are based upon Pennsylvania state law which shall be applied in

resolving the instant dispute. Primerock seeks a declaratory judgment striking the Satisfaction

---

[5] Thus, the Court notes that Primerock confessed judgment against the Debtor over a month prior
to the execution and recording of the Zhuang Mortgage.

Piece and Termination Statement[6] and determining the priority of liens and security interests

held by Primerock. Pursuant to Pennsylvania law,

> [A] party may obtain a declaration of existing legal rights, duties, or status of
> parties by filing a petition pursuant to the Declaratory Judgments Act.
> Furthermore, the purpose of the Declaratory Judgments Act is to "settle and to
> afford relief from uncertainty and insecurity with respect to rights, status, and
> other legal relations, and is to be liberally construed and administered." 42
> Pa.C.S.A. §7541(a).

*Bayada Nurses, Inc. v. Commonwealth, Dep't of Labor & Indus.*, 8 A.3d 866, 874 (Pa. 2010).

Primerock also seeks to quiet title with respect to its mortgage. "Quiet title actions include

actions to determine the validity of liens and priority of liens." *See M&T Mortg. Corp. v. Trosky*

(*In re Trosky*), 371 B.R. 701, 704, n.3 (Bankr.M.D.Pa. 2006) (citing to Pa.R.C.P. 1061(b)).

Primerock contends that it is entitled to the relief requested as a matter of law, which Zhuang

opposes, asserting that he is entitled to entry of judgment in his favor. The Court now turns to the

parties' contentions.

The parties primarily focused their arguments on the Satisfaction Piece and its effects.

Therefore, the Court begins its analysis with that issue.

> Under Pennsylvania law, a recorded satisfaction piece serves as evidence that the
> debtor has fully satisfied the note and that the creditor has released the mortgage
> lien. *See* 21 PA. STAT. ANN. §721-4 ("The satisfaction piece when recorded
> shall forever thereafter discharge, defeat and release the lien and debt of the
> mortgage."); *see also id.* §681.

*See Ingomar Ltd. P'ship v. Current*, No. 1:06-CV-1433, 2008 U.S. Dist. LEXIS 17668, *14,

2008 WL 660099, *4 (M.D. Pa. Mar. 6, 2008). Accordingly, it is the mortgagee who may record

---

[6] Counts I and II, seeking to strike the Satisfaction Piece and Termination Statement, were
brought against the Trustee and Debtor, and Primerock sought to resolve those matters through
the Stipulation with the Trustee and Motion for Entry of Default Judgment against the Debtor.
However, as previously noted by this Court and recognized by Zhuang, determination of these
issues affects Zhuang's position in this proceeding. Thus, the matters are addressed together
herein.

the satisfaction piece. Although *prima facie* evidence of payment, a satisfaction piece is not conclusive and relief can be granted where an encumbrance is improperly discharged. *See Alliance Funding Co. v. Stahl*, 829 A.2d 1179, 1181 (Pa.Super.Ct.2003). In order to be granted the relief sought, the plaintiff must "prove that the defendants were not entitled to have the mortgage satisfied." *Id.* (quoting *St. Clements Building & Loan Ass'n v. McCann*, 190 A. 393, 394 (Pa.Super.Ct. 1937)).[7]

In this case, it is clear that relief is appropriate against the Debtor as the Debtor was not entitled to have the mortgage satisfied. However, the rights of third parties are also at issue. Although Pennsylvania law determines priority according to the date of recording, priority cannot be determined until the validity of the Satisfaction Piece is resolved. Primerock clearly recorded its mortgage first. However, Primerock maintains its priority only if the forged Satisfaction Piece is determined to be without effect as to third parties. In resolving these matters, the Court is faced with two important principles: the invalidity of forged and unauthorized filings and the interests of bona fide mortgagees for value. Under the facts of this case, one must take precedence over the other.

In *Brown v. Henry*, the Pennsylvania Supreme Court considered facts similar to those presently before this Court. 106 Pa. 262 (1884). In that case, a mortgagee contended that a satisfaction was a nullity where the mortgage was satisfied mistakenly without the authorization of the mortgagee but rather by the holder of another mortgage. *Id.* at 266. After the unauthorized

---

[7] Unlike the facts of this case, in *Stahl*, the plaintiff was seeking to strike a satisfaction piece that it entered due to its own error. Citing to *McCann*, the court stated "a release or satisfaction entered by *accident or inadvertence . . .* may be set aside and the mortgage reinstated, *except as the rights of third persons may prevent.*" *Id.* (emphasis added). As the rights of third parties were at issue in that case, the court remanded to the trial court for determination of whether the rights of those third parties prevailed. *See* 829 A.2d at 1184. Thus, even when satisfaction was erroneously recorded by the plaintiff, the court did not make a clear statement that third parties' rights always prevail.

entry of satisfaction, the property was purchased and that purchaser "defended upon the ground

that the mortgage in suit had been satisfied of record before he purchased the property; that he

had been furnished by the recorder of deeds with a clean search, and that he had paid the full

value of the premises." *Id.* The court noted the difficulty of resolving the issue given the facts of

the case:

> From this state of facts it is obvious one of the parties must suffer a serious loss.
> Neither appears to be in default; neither can complain that he has been misled by
> the other; hence there is no room for the application of the principle that where
> one of two innocent parties must suffer, the loss shall fall upon the one whose acts
> of commission or omission occasioned the injury. It is our business to ascertain
> where the law places it.

*Id.* 266-67. Ultimately, the court found as follows:

> The ground of the decision in *Lancaster v. Smith* was that the satisfaction had
> been entered without the authority of the mortgagee. It is immaterial whether the
> want of authority is the result of fraud or of mistake. The authority to enter
> satisfaction is lacking in either case, and because of its absence the satisfaction is
> worthless.

*Id.* at 268. The court relied upon the reasoning in *Lancaster v. Smith,* in which the court

previously held that a mortgagee was not estopped from enforcing a mortgage even against an

innocent purchaser where the mortgagee did nothing to mislead the purchaser and her name had

been forged on a power of attorney under which satisfaction was entered on the mortgage. *See* 67

Pa. 427 (1871). *Brown* has been cited, along with cases from other jurisdictions, in support of the

rule that a wrongfully satisfied mortgage survives notwithstanding the existence of a subsequent

12

bona fide purchaser or mortgagee for value.[8]

Despite their dates of publication, the principles of *Brown* and *Lancaster* have been relied

upon in more recent case law. In *Leedom v. Spano*, the Superior Court of Pennsylvania addressed

an action by mortgagees against homeowners who purchased their properties subject to a prior

mortgage for which a forged mortgage release was filed. 647 A.2d 221 (Pa.Super.Ct.1994). The

homeowners argued, *inter alia*, "that a forged mortgage release passes them unencumbered

title." *Id.* at 227. The homeowners contended that they were without fault, had a right to rely on

the public records, and would not have purchased the property unless the mortgage had been

released. *Id.* at 228. The homeowners' arguments were rejected by the court. The court noted,

> There is no case cited by Homeowners to support the proposition that they may
> rely on a forged document to assert their status as bona fide purchasers for value.
> *See Brown v. Henry*, 106 Pa. 262 (1884) (our Supreme Court rejected a claim that
> a subsequent purchaser could recover based on a forged satisfaction of a
> mortgage); *Lancaster v. Smith*, 67 Pa. 427 (1871) (purchaser could not assert a
> claim against seller for a forged mortgage satisfaction absent conduct by seller
> that raises estoppel).

*Id.* at 228-29. Although the homeowners, like the mortgagees, were innocent as to the forged

satisfaction, judgment against the homeowners was affirmed. *Id.* at 229. The homeowners were

to look to their title insurance companies for their remedy. *Id.* The court relied on prior case law

to conclude that the mortgagees prevailed.

---

[8] "The weight of authority is to the effect that the lien of a recorded mortgage remains unaffected
by an unauthorized satisfaction of record and will be enforced against a subsequent purchaser or
encumbrancer for value in the absence of negligence on the part of the mortgagee or other
circumstances which provide an independent basis for denying to the mortgagee the benefits of
his legal lien." *See In re Paul Scotton Contracting Co.*, 325 F. Supp. 324, 328 (D. Del. 1971)
(citing to *Brown v. Henry* and various cases from other jurisdictions). The principle has also been
cited as the applicable rule in the Pennsylvania Law Encyclopedia: "As a general rule, the holder
of a valid mortgage cannot be deprived of a security or postponed to junior liens by any act to
which he or she is not a consenting party. A marginal entry of satisfaction on the record of a
mortgage will not estop the mortgagee, as against a bona fide purchaser for value without notice,
from showing that the entry was made by some unauthorized person by mistake on the wrong
mortgage." *See* 8 Pennsylvania Law Encyclopedia, Commercial Transactions §113.

Similar to the position of the homeowners in *Leedom*, Zhuang asserts that he is a bona fide mortgagee for value. He cites to several cases in support of his assertion that innocent mortgagees for value are not bound by unknown liens: *Kepler v. Kepler*, 199 A. 198 (Pa. 1938); *Puharic v. Novy*, 176 A. 233 (Pa. 1934); *Haggerty v. Moyerman*, 184 A. 654 (Pa. 1936); *Wells Fargo Bank N.A. v. Doe*, No. 2652, 2012 Phila. Ct. Com. Pl. LEXIS 174 (Pa.Ct.Com.Pl. June 12, 2012). Accordingly, Zhuang asserts that he is entitled to judgment as a matter of law against Primerock. However, while the cases cited by Zhuang involved fraud, none of these cases address the validity of a forged satisfaction piece as to a bona fide mortgagee for value.

In *Kepler v. Kepler,* the Pennsylvania Supreme Court addressed the dismissal of appellant's bill in equity on preliminary objections. 199 A. 198, 202 (Pa. 1938). Appellant contended that she was fraudulently induced by her son to enter into three agreements. *Id.* at 201. By entering into the first two agreements, appellant, while expressly reserving her right to possession of a portion of certain property, surrendered her life interest in proceeds from a farm in exchange for the receipt of an annual sum. *Id.* Subsequently, the son and his wife mortgaged the property. *Id.* The son then induced his mother to enter into the third agreement pursuant to which she postponed her interest in the property to that of the mortgage as though she had personally joined in said mortgage. *Id.* The stated consideration under the agreement was the amount paid and to be paid to her son and daughter-in-law under the already recorded mortgage. *Id.* Thereafter, the assignee of the mortgage foreclosed and received the deed. *Id.* The property was then conveyed to the son's widow who mortgaged the property. *Id.* Appellant sought to have the mortgages, sheriff's sale, and deeds set aside. *Id.* As to the first two agreements, the court noted that it was insufficient to simply allege fraudulent inducement without supporting facts. *Id.* at 202. The court then recited the following principle:

> An innocent mortgagee for value is not bound by secret liens or equities even
> though the mortgagor's title was obtained by fraud: *Puharic v. Novy*, 317 Pa. 199;
> *Haggerty v. Moyerman*, 321 Pa. 555. The land bank gave valuable consideration
> for the son's mortgage. Since fraud as to the agreements of 1916 and 1917 was
> not adequately alleged, and since fraud not of record and unknown to a bona fide
> mortgagee for value does not bind him or subsequent takers, appellant is not
> entitled to have these two agreements set aside, under the pleadings as now
> drawn.

*Id.* The court then addressed the third agreement, which was executed after the mortgage was

recorded:

> The rule is that, where a mortgage is given solely as security for an antecedent
> debt, and the mother's last agreement was such a mortgage, the mortgagee takes
> subject to all equities, including fraud, here the son's misrepresentation. An
> antecedent debt is not valuable consideration, and, in the absence of such
> consideration, a mortgagee or other creditor is not to be treated as a holder for
> value without notice: *Ashton's Appeal*, 73 Pa. 153, 162.

*Id.* at 203. Accordingly, to the extent the third agreement constituted a mortgage given as

security for an antecedent debt, it could be set aside on the basis of fraud.

Although Zhuang relies upon the language in *Kepler*, the facts are distinguishable as

*Kepler* dealt with a fraudulent inducement whereas this Court is considering the effect of a

forged satisfaction piece. While the appellant in *Kepler* entered into agreements (albeit based

upon alleged false representations), she presumably knew that those agreements affected her

interests by agreeing to surrender her life interest in proceeds from a farm and postponing her

interest in property to a mortgage. Here, Primerock properly and promptly recorded its mortgage

to provide notice of its interest and took no steps to release its interest. No facts suggest that it

should have questioned the continued validity of its mortgage. Rather, steps were taken without

its knowledge and authority.[9]

This Court also finds distinguishable the facts set forth in *Puharic v. Novy*, 176 A. 233

(Pa. 1934). In that case, an owner conveyed a one-half interest in property to the grantee. *Id.* at

234. Then, through the owner's will, the grantee acquired a life estate to the other one-half of the

property and executed a mortgage on the property. *Id.* Without notice to the mortgagee, the

children of the previous owner successfully challenged the will and deed on the basis of fraud

and duress and the will and deed were declared to be null and void. *Id.* Thereafter, the children

sought a determination that the mortgage no longer bound the property. *Id.* The court rejected the

children's request for relief:

> It was contended in the court below, as it is here, that when the deed and will fell
> because of the mortgagor's fraud in acquiring title, as the mortgagee's rights rose
> no higher, his mortgage no longer bound the property, and became a mere
> personal claim against the mortgagor. This claim can not be sustained. "A deed
> procured by fraud is ordinarily held voidable merely; and title passes to the
> grantee subject to the grantor's right to defeat it. A deed procured through undue
> influence or duress is likewise voidable merely . . .": 18 C.J. 242, section 175.

*Id.* at 234. Furthermore, although the will and deed were declared null and void in a prior

proceeding against the grantee, the mortgagee was not bound by that proceeding as it was

commenced after the execution of the mortgage and he was not a party to it. *Id.* at 234-35. Thus,

the mortgagee prevailed.

Unlike the facts in *Puharic*, in this case, Primerock properly provided notice of its

interest by recording its mortgage. Primerock was not fraudulently induced to release its

mortgage, and, in fact, took no steps to do so. Furthermore, although by citing to *Puharic,*

Zhuang compares these facts to a deed procured by undue influence, this Court finds that the

---

[9] Primerock also contends that Zhuang's reliance on *Kepler* undercuts rather than supports
Zhuang's position as Zhuang, like the mortgagee in *Kepler,* was provided with a mortgage to
secure an antecedent debt and thus took his position subject to the fraud committed. The Court
notes this additional argument by Primerock but need not rely on it to resolve this matter.

facts of this case are more analogous to a deed procured through forgery. In such cases, the true

owner cannot be deprived of his property even by a bona fide purchaser or mortgagee for

value.[10] Although not directly on point, it is clear that even a bona fide purchaser or mortgagee

for value will not always prevail despite reliance on the public records. The same principle seems

to apply here.

Furthermore, unlike the plaintiff in *Haggerty v. Moyerman*, the facts do not demonstrate

that Primerock had notice of the steps taken against it yet failed to take action to protect its

rights. *See* 184 A. 654 (Pa. 1936). In *Haggerty*, the court found the plaintiff to be a victim of a

gross fraud when an attorney "caused two properties, totaling $13,000 in assessed value, to be

levied upon and sold to satisfy a judgment of less than $100." *Id.* at 655. After the properties

were sold at sheriff's sale, mortgages were executed on the properties. *Id.* After the

commencement of the proceeding by plaintiff, the properties were reconveyed to the plaintiff but

one mortgage remained which plaintiff sought to have cancelled and satisfied of record. *Id.* The

court found that the mortgagee was in the position of an innocent purchaser for value and could

not be forced to suffer a loss due to plaintiff's failure to act promptly to protect her interests. *Id.*

at 656. The court cited to "the fundamental principle that where one of two innocent persons

must suffer, he whose neglect made the injury possible should bear the loss[.]" *Id.* Based upon

---

[10] *See Thees v. Prudential Ins. Co.,* 190 A. 895, 896 (Pa. 1937) ("There is nothing in law or in
reason that would require one to examine the record to discover an instrument he never executed,
knew nothing of, nor had any occasion to know anything about. A forged instrument being of
record for a long period of time does not estop the injured party from asserting the fraud and
securing its cancellation."); *Smith v. Markland,* 72 A. 1047, 1056 (Pa.1909) ("'No man can be
deprived of his property by a forged deed or mortgage, no matter what may be the bona fides of
the party who claims under it.' In the very nature of things there can be no other rule.");
*Warehouse Builders and Supply, Inc. v. Perryman*, 257 A.2d 349, 351-52 (Pa.Super.Ct. 1969)
(citing the rule that "a forged deed is a void deed even in the hands of an innocent purchaser" but
noting the applicability of the defenses of laches and estoppel in that case).

the stipulated facts, the court finds no such neglect by Primerock and thus concludes that the
principle is inapplicable to Primerock in this case.

Zhuang also relies upon the decision in *Wells Fargo Bank, N.A. v. Doe*, No. 2652, 2012
Phila. Ct. Com. Pl. LEXIS 174 (Pa.Ct.Com.Pl. June 12, 2012). In that case, property was
purchased and a note and mortgage were executed in the name of an individual whose identity
was stolen and whose signature was forged on the documents. *Id.* at *2-3. The mortgagee settled
with the victim of the identity theft and then filed an ejectment action to remove the occupants
from the property. *Id.* at *3-4. In response, two parties claimed an ownership interest in the
property. *Id.* at *4-5. Although a settlement was reached through mediation pursuant to which
these parties were not to impede or participate in the mortgagee's foreclosure action, both filed
answers and counterclaims in the subsequent foreclosure action. *Id.* at *6-7. Among the meritless
arguments addressed and rejected by the court, these defendants asserted "that Plaintiff's
mortgage is 'vitiated' by knowledge of the fraudulent circumstances surrounding the Mortgage."
*Id.* at *17. The court rejected the assertion stating that "a mortgagee who gives consideration for
lien and has no actual or constructive knowledge of claims of third parties is protected even
though mortgagor's title was obtained by fraud." *Id.* The court also noted that none of
defendants' allegations of fraud asserted that a fraud was committed on *them*. *Id.* *13.

The facts of *Doe* are wholly distinguishable from the facts of this case. In *Doe*, the rights
of the victim of the identity theft and forgery were not at issue due to a settlement, and the court
considered the defendants' asserted claims to the property against that of the mortgagee. Thus,
this case had little to do with the forged documents but rather dealt with the alleged interests of
these defendants. The mortgage was recorded in 2002. *Id.* at *1. One of the defendants claimed
an interest in the property by a deed dated 2003 and recorded in 2007, and the other asserted an

unrecorded ownership interest in the property. *Id.* at *5. These defendants' positions are entirely

different than the position of Primerock in this proceeding. In this case, the party opposing the

subsequent mortgagees is the victim of the forged document and was the first recorded lien on

the property. The validity of the forged document is at the heart of this proceeding. This Court

recognizes the significance of the principle protecting a mortgagee who gives value for a lien

without notice of third parties' claims; however, the question in this case is whether that

principle applies in light of a prior recorded lien that was marked as satisfied through forgery.

*Doe* does not answer this question.

A recorded satisfaction is documentation that the borrower has paid the note in full and

that the creditor, therefore, has released the lien. This Court acknowledges the importance of

being able to rely upon the public records and recognizes the policy of protecting bona fide

purchasers and mortgagees for value. As it has been set forth in case law,

> The purpose of the rule is manifest. Secret liens or encumbrances against any
> species of property are not to be encouraged. More particularly is this so with
> respect to real estate, where the owner of the lien, encumbrance or equity may
> record it or institute proceedings immediately to secure its permanent record and
> place it in a position from which those who deal with the property thereafter may
> learn that the owner does not hold a perfect title to the land involved. Where one
> deals with such property in entire ignorance of the existence of any recorded
> document or liens affecting it, he can not be penalized because of the neglect of
> those who could have put him on notice of their claim. Where one of two innocent
> persons must suffer, he whose neglect makes the injury possible must bear the
> responsibility.

*See Puharic*, 176 A. at 234. The purpose of the rule is not served by implementing it in this case.

Primerock did record its mortgage thereby giving notice of its interest through the public records.

It was not Primerock's neglect that made the injury possible. This Court finds that Primerock's

mortgage is entitled to priority status, even to the detriment of MileStone and Zhuang. This result

is consistent with applicable Pennsylvania law. *See Brown v. Henry*, 106 Pa. 262 (1884);

*Lancaster v. Smith,* 67 Pa. 427 (1871); *Leedom v. Spano*, 647 A.2d 221 (Pa.Super.Ct.1994).

The Court notes that the parties' arguments primarily related to the effect of the

Satisfaction Piece. However, the effectiveness of the unauthorized Termination Statement and

the priority of the parties' interests in the personal property must be resolved. Generally, priority

is determined by time of filing. *See* 13 Pa.Cons.Stat. §9322(a)(1) (2012). It is undisputed that

Primerock's Financing Statement was filed prior to Zhuang's Financing Statement. However,

shortly before the Zhuang Loan, the unauthorized Termination Statement was filed. Thus, the

issue for the Court is the effect of the unauthorized filing on priority.

Pursuant to Pennsylvania statute, "[a] filed record is effective only to the extent that it

was filed by a person that may file it under section 9509 (relating to persons entitled to file a

record)." 13 Pa.Cons.Stat. §9510(a). In pertinent part, the persons entitled to file records are set

forth as follows:

> (d) *Person entitled to file certain amendments.*[11] --A person may file an
> amendment . . . only if:
> (1) the secured party of record authorizes the filing; or
> (2) the amendment is a termination statement for a financing statement as
> to which the secured party of record has failed to file or send a termination
> statement as required by section 9513(a) or (c) (relating to termination
> statement), the debtor authorizes the filing and the termination statement
> indicates that the debtor authorized it to be filed.

13 Pa.Cons.Stat. §9509(d). As set forth in §9513, it is the secured party of record for a particular

financing statement that is authorized to file the termination statement. However, as provided in

§9509(d), there are circumstances when a debtor is authorized to file a termination statement.

Those circumstances do not apply here. This is not a case where Primerock failed to file a

---

[11] A "termination statement" is "[a]n amendment of a financing statement[.]" 13 Pa.Cons.Stat.
§9102.

termination statement to which the Debtor was entitled thereby enabling the Debtor to take the

step on Primerock's behalf. As the Financing Statement was properly filed in the first place and

the debt related thereto remained unsatisfied, Primerock was the only one entitled to authorize

the filing of a termination statement and did not do so. Thus, the Termination Statement was an

ineffective filing pursuant to §9510(a).

 Although this Court has not discovered, and the parties have not cited, Pennsylvania case

law on point with the facts of this case, the issue has been addressed by courts in other

jurisdictions. *See AEG Liquidation Trust v. Toobro NY LLC,* 932 N.Y.S.2d 759 (N.Y. Sup.Ct.

2011) (finding that, where the secured party did not authorize the filing of termination

statements, said statements were ineffective and thus financing statements to which they related

continued to be effective); *Lange v. Mut. of Omaha Bank* (*In re Negus-Sons, Inc.*), 460 B.R. 754,

757, n.10 (B.A.P. 8th Cir. 2011) (noting that treating an unauthorized termination statement as

effective "appears to be contrary to the plain language of the Uniform Commercial Code"). The

Court finds the analyses in these cases to be persuasive, in accord with the applicable provisions

of the Uniform Commercial Code, and likely to be the approach taken by courts in Pennsylvania.

Further bolstering this conclusion is the fact that it is consistent with Pennsylvania's treatment of

forged satisfaction pieces as discussed *supra.* Accordingly, this Court finds that the unauthorized

Termination Statement had no effect on Primerock's Financing Statement and Primerock is

entitled to its priority status.

 The decision in this case was not reached without careful thought, especially with regard

to the importance of the recording system and the need for reliance on public records. This Court

holds those principles in high regard and does not seek to weaken reliance on the public records

in any way. However, in light of the forgery and unauthorized termination of Primerock's

21

security interests, this Court agrees that the result under Pennsylvania law is the most equitable.

Furthermore, while all three mortgagees are victims of these unauthorized filings, Primerock

seems to be the *most* innocent party under the circumstances. While MileStone loaned funds in

2011, it did so with knowledge of the Primerock Mortgage as the Satisfaction Piece was not

recorded until after the MileStone Mortgage. As previously noted, MileStone and Primerock

resolved the issues between them. As to Zhuang, who would at least be second in priority to

MileStone at the time of his loan, he did not record his mortgage until approximately forty-five

days after he made the loan *and* after Primerock confessed judgment against the Debtor.

Nonetheless, the harm to Zhuang is significant and an unfortunate result; however, pursuant to

Pennsylvania law, it is the correct one. By setting aside the forged Satisfaction Piece and

unauthorized Termination Statement, Primerock is properly returned to the position it was in

prior to the entry of those documents on the public records.


Conclusion

      For the foregoing reasons, this Court finds that Primerock is entitled to the entry of

judgment in its favor. Accordingly, Primerock's motion for summary judgment is granted, and

Zhuang's motion is denied. As these issues are now resolved, it is also appropriate to enter

default judgment against the Debtor at this time. An order consistent with this Opinion will be

entered.


                                            __/s/ Carlota M. Böhm_____

DATE: March 4, 2013                          Carlota M. Böhm
                                        United States Bankruptcy Judge

**CASE ADMINISTRATOR TO MAIL TO:**

Office of the United States Trustee

Jeffrey J. Sikirica, Esq.

Gregory L. Taddonio, Esq.

John R. Gotaskie, Esq.

Robert O. Lampl, Esq. and David L. Fuchs, Esq.

Steven T. Shreve, Esq.

Rag East, LP